IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned On Briefs April 5, 2005

## STATE OF TENNESSEE v. JEFFERY HAYES

**Direct Appeal from the Circuit Court for Montgomery County
No. 40300430 Michael R. Jones, Judge**

_____

**No. M2004-00726-CCA-R3-CD - Filed May 24, 2005**

_____

The defendant, Jeffery Hayes, entered an open guilty plea to one count of the sale of less than .5 grams of cocaine, a Class C felony, two counts of the sale of more than .5 grams of cocaine, Class B felonies, and one count of possession with intent to sell more than .5 grams of cocaine, a Class B felony. He was sentenced to an effective sentence of ten years as a Range I standard offender. On appeal, he argues that the trial court erred in imposing an excessive sentence and denying alternative sentencing. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which DAVID H. WELLES and JAMES CURWOOD WITT, JR., JJ., joined.

Roger E. Nell, (on appeal) District Public Defender, and Gregory D. Smith (at trial) for the appellant, Jeffery Hayes.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; John W. Carney, Jr., District Attorney General; and Helen Young, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts**

This case relates to the defendant's possession and sale of cocaine. The defendant was caught and arrested after a series of controlled buys between the defendant and a confidential informant, who was wired. These buys were captured by audio and video and witnessed by individuals conducting the surveillance. After being indicted on multiple drug charges, the defendant entered an open guilty plea to one count of sale of less than .5 grams of cocaine, two counts of sale of more than .5 grams of cocaine, and one count of possession of .5 grams or more with intent to sell.

At the sentencing hearing, Quinton Hayes, the defendant's older brother, testified that he and the defendant socialized with each other and attended church together. According to Mr. Hayes, the defendant actively participated in Sunday School and brought many people to church with him. Mr. Hayes stated that he believed the defendant to be a compassionate and religious person. Mr. Hayes testified that the defendant's family was well-respected and active in the community.

Mr. Hayes explained that the defendant was suffering from some physical ailments. According to Mr. Hayes, the defendant had heart problems and walked with a limp. Mr. Hayes stated that he would help the defendant if the defendant was given alternative sentencing.

On cross-examination, Mr. Hayes acknowledged that the defendant had been charged with a criminal offense while living in Florida with family. Mr. Hayes also admitted that the defendant had been in trouble for theft, burglary, and drugs. However, Mr. Hayes stated that the last time the defendant had been charged with a felony was over twenty years ago.

Randy Brown, the defendant's minister, testified that the defendant was a junior trustee at church and taught an adult Sunday school class. Brown stated that the defendant was a willing participant in church. According to Brown, the defendant picked up trash around the church, ran errands for the church, fixed up the church, and generally did whatever was asked of him. Brown acknowledged that he heard that the defendant pled guilty to a couple of counts of selling cocaine but insisted that he still trusted the defendant in the position of trustee. Brown felt that the defendant's convictions were foreign to the defendant's character and explained that he would help the defendant if the defendant received an alternative sentence.

The defendant testified that he was fifty-two years old and had rededicated his life to the church in Savannah, Georgia in 1999 while living with his sister. He moved back to Clarksville in 2000 and immediately became active in the church. The defendant stated that he was very sorry for his actions. He explained that he got "off base" with the present offenses and pled guilty because he knew his actions were wrong.

The defendant explained that he got into selling cocaine because of money problems. The defendant also explained that money seized by officers was from a $10,000 check he received in settlement for his leg injury. He received the money in September, paid half to the hospital, and placed the other half in his safe deposit box. The defendant further explained that the vehicles seized were cars he planned to fix up and sell. The defendant stated that his last felony conviction was in 1986 and claimed that he did not commit the crime, but only provided a ride for the individuals who committed the felony. The defendant acknowledged that he had a few misdemeanor convictions.

The defendant testified that he was a good candidate for alternative sentencing because he had five children and seven grandchildren and desired to be around them and encourage them. He also indicated that he had a heart condition and needed surgery on his knee. The defendant stated that he had been drawing disability since 1994. The defendant also stated that he tried to help anybody who needs help and tried to be there for his children and grandchildren. According to the

defendant, he was willing to comply with the terms of an alternative sentence including random drug testing.

On cross-examination, the defendant denied that he began selling cocaine immediately after moving back to Clarksville in 2000. However, the defendant acknowledged that he conducted three cocaine transactions at different locations, one of which was near a school. He also admitted that police officers discovered drugs at his residence. He further acknowledged that a comment on his unsigned statement indicated that he was the owner of the drugs and traded drugs for sex with local girls. However, the defendant stated that at the time he made the statement, he had been detained by police for over eight hours, was tired and delirious, and was simply telling the police what they wanted to hear off the record.

On cross-examination, the defendant stated that he could not recall if he had a felony conviction in Florida but recalled being charged with assault and battery in connection to a fight he had with his girlfriend. He acknowledged that he had been given several chances at probation in the past. Acknowledging some of his prior convictions, the defendant admitted that he received a six month suspended sentence for shoplifting on February 15, 1978, was convicted of criminal trespass on November 22, 1978 and February 23, 1979, received a six-month suspended sentence for assault and battery in 1982, was convicted of two aggravated burglaries in 1986, and was convicted of possession of drugs in 1989. The defendant further admitted that his parole was violated for attempting to elude police while driving without a license, and that he received a conviction for possession of drugs in 1990. However, the defendant stated that the 1993 vandalism charge was dropped, and he could not remember a weapons charge in 1994. On redirect, the defendant claimed that his previous convictions were committed while he was young and were many years old.

At the conclusion of the hearing, the trial court applied enhancement factors (2), the defendant had a prior history of criminal convictions; and (9), the defendant had a previous history of unwillingness to comply with the conditions of a sentence involving release into the community. The trial court stated that it gave the greatest weight to the defendant's history of criminal convictions. The trial court then considered mitigating evidence that the defendant's conduct neither caused nor threatened serious bodily injury, and that he pled guilty to the offenses. See Tenn. Code Ann. § 40-35-113 (1) & (13). The trial court stated that it gave very little weight to the mitigating evidence. The trial court sentenced the defendant to six years for the sale of cocaine less than .5 grams, a Class C felony; ten years for each count of the sale of cocaine more than .5 grams, Class B felonies; and ten years for the possession with intent to sell more than .5 grams of cocaine, a Class B felony. The trial court ordered the sentences to run concurrently for a total effective sentence of ten years in the Department of Correction.

## II. Analysis

On appeal, the defendant argues that the trial court erred in imposing an excessive sentence. Specifically, the defendant argues that the trial court improperly enhanced his sentence in violation of Blakely v. Washington, 542 U.S. ----, 124 S. Ct. 2531 (2004).

Before a trial court sentences a convicted defendant, it must consider (1) the evidence received at the trial and/or sentencing hearing; (2) the presentence report; (3) the principles of sentencing; (4) the arguments of counsel relative to sentencing alternatives; (5) the nature and characteristics of the criminal conduct involved; (6) any mitigating or enhancement factors; (7) any statements made by the defendant in his or her own behalf; and (8) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210; State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). The trial court is also required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated in determining the sentence. Imfeld, 70 S.W.3d at 704-05.

This Court's review of a challenged sentence is a *de novo* review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). This presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999). The defendant has the burden of showing that the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely *de novo* without the presumption of correctness. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

According to Tennessee sentencing statutes, the sentencing range for a Range I offender who commits a Class B felony is eight to twelve years. Tenn. Code Ann. § 40-35-112(a)(2). In calculating the sentence for a Class B, C, D, or E felony conviction, the presumptive sentence is the statutory minimum for a Range I offender if there are no enhancement or mitigating factors. See id. § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. Id. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Id. § 40-35-210(e). The sentence must then be reduced within the range by any weight assigned to the mitigating factors present. Id.

This Court had previously concluded that Blakely impacted the validity of our statutory sentencing scheme, insofar as our enhancement provisions permitted a trial court to increase a defendant's presumptive sentence based upon facts not reflected in the jury's verdict or admitted by the defendant. See e.g., State v. Chester Wayne Walters, No. M2003-03019-CCA-R3-CD, 2004 WL 2726034 (Tenn. Crim. App., at Nashville, Nov. 30, 2004), perm. app. denied, (Tenn. 2005); see also Blakely, 124 S. Ct. at 2537. However, recently our supreme court has held that Blakely does not announce a new rule of law or impact the validity of our statutory sentencing scheme. State v. Edwin Gomez and Jonathan S. Londono, No. M2002-01209-SC-R11-CD, --- S.W.3d ----, 2005 WL 856848 (Tenn. April, 14, 2005), petition to rehear filed (Tenn. 2005). Our supreme court opined that Blakely's prohibition against the imposition of an enhanced sentence based upon facts not authorized by a jury verdict rested on the premise that the sentencing scheme was mandatory and

imposed binding requirements on all judges imposing sentences. Gomez, 2005 WL 856848, at *18-19 (quoting United States v. Booker, __ U.S. __, 125 S. Ct. 738, 749 (2005)). According to our supreme court, Tennessee's sentencing scheme does not mandate an increase in sentencing upon the finding of enhancement factors. Id. at 19-22. Instead, Tennessee's sentencing scheme reflects a discretionary process where a trial judge is required to consider enhancement and mitigating factors but is free to exercise discretion when choosing a sentence within the statutory range. Id. at 22. Therefore, our supreme court held that Tennessee's sentencing scheme constitutes a non-mandatory scheme which does not violate the Sixth Amendment right to a jury trial as proscribed by Blakely. Id.

Not only is the defendant's Blakely argument misplaced in light of Gomez, but also his argument is without merit. Prior convictions are an exception to Blakely and need not be found by a jury or admitted by the defendant. See Blakely, 124 S. Ct. at 2536. The record clearly reflects that the trial court gave great weight to the fact that the defendant had a previous history of criminal convictions. According to the defendant's presentence report, he was convicted of shoplifting, two counts of breaking and entering, two counts of criminal trespass, assault and battery, possession of marijuana, driving on a revoked license, driving without a license, possession of drugs, vandalism, a weapons offense, public intoxication, and burglary. As such, the defendant's history of prior convictions alone warrant the enhanced sentence of ten years, two years over the presumptive sentence. Therefore, we conclude that the trial court properly imposed a ten year sentence and the issue is without merit.

The defendant also argues that the trial court erred in denying alternative sentencing. Specifically, the defendant argues that the trial court failed to consider the evidence presented supporting his amenability to rehabilitation. According to the defendant, the trial court should have considered the defendant's active involvement in church and limited the weight given to his prior convictions because of their remoteness in time.

Pursuant to Tennessee Code Annotated section 40-35-103, confinement should be based upon the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant; . . . .

Absent evidence to the contrary, a defendant is presumed to be a favorable candidate for alternative sentencing if the defendant is an especially mitigated or standard offender convicted of a Class C, D, or E felony. Tenn. Code Ann. § 40-35-102(6). However, this presumption is unavailable to a defendant who commits the most severe offenses, has a criminal history showing

clear disregard for the laws and morals of society, and has failed past efforts at rehabilitation. Id. § 40-35-102(5); State v. Fields, 40 S.W.3d 435, 440 (Tenn. 2001).

Initially, we note that the defendant was sentenced to more than eight years; therefore, he is not eligible for probation. See Tenn. Code Ann. § 40-35-303(a). In addition, the defendant is not entitled to the presumption for alternative sentencing because he was convicted of three Class B felonies and had an extensive criminal history. See Tenn. Code Ann. § 40-35-102(6). In sentencing the defendant to ten years in confinement, the trial court found that the defendant had a long history of criminal conduct, that confinement was particularly suited to provide an effective deterrent to other drug dealers, that the offenses of selling cocaine for profit were very serious, and that less restrictive measures had been frequently applied unsuccessfully. Moreover, the trial court considered the defendant's involvement in church but found that the defendant was living a dual life: one at church, one selling drugs. Upon review, the record supports the trial court's denial of alternative sentencing. Accordingly, this issue is without merit.

### III. Conclusion

Based upon our review of the record and applicable law, we affirm the judgment of the trial court.

_____
J.C. McLIN, JUDGE